John C. TURNBAUGH and Rosemary Turnbaugh, his wife, Plaintiffs,

v.

GAF CORPORATION, Raymark Industries, Inc., Celotex Corporation, successor in interest to Philip Carey Mfg. Co., Philip Carey Corporation, Briggs Mfg. Co., and/or Panacon Corp., Keene Building Products Corporation, Eagle-Picher Industries, Inc., Owens Corning Fiberglas Corporation, Owens Illinois Inc., Garlock, Inc., Combustion Engineering, Fiberboard Corporation, A-Best Products Co., A.P. Green Refractories Co., Standard Asbestos Mfg. and Insulating Co., Nichias Corporation and Manville Asbestos Disease Compensation Fund, Defendants.

Civ. A. No. 86-0747.

United States District Court, W.D. Pennsylvania.

June 17, 1991.

Thomas Henderson, Henderson and Goldberg, Pittsburgh, Pa., for John C. Turnbaugh and Rosemary Turnbaugh.

David R. Johnson, Thomson, Rhodes and Cowie, Pittsburgh, Pa., for Raymark Industries, Inc.

Arnold Klein, Pittsburgh, Pa., and Fredric Goldfein, Philadelphia, Pa., for Garlock, Inc.

Wendell B. Alcorn, Jr., John F. Mariani, Calwalader, Wickersham and Taft, New York City, for Nichias Corp.

Patrick Riley, Vincent DeFalice, Egler, Anstandig Garrett and Riley, Gerald C. Paris, Diane Perer, Ronald Jones, Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for Celotex Corp., Fiberboard Corp., Keene Bldg. Products Corp., Owens Corning Fiberglas Corp. and Owens Illinois, Inc.

Concetta A. Silvaggio, Willman and Arnold, Pittsburgh, Pa., for A-Best Products Co.

Daniel Ryan, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, Pa., for Manville Asbestos Disease Comp. Fund.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before the Court in this action for damages for alleged exposure to asbestos are the Motions of Fiberboard Corporation and Owens–Illinois, Inc., for summary judgment based on lack of product identification.

The defendants assert, *inter alia,* that plaintiffs have not identified any asbestos-containing products of the movants to which the plaintiff-husband was exposed and therefore the plaintiffs' evidence is insufficient as a matter of law to prove that the product of the movants caused the plaintiff-husband's alleged injuries.

For the reasons discussed hereafter, the Motions will be denied.

In interpreting Fed.R.Civ.P. 56(c), with regard to Motions for Summary Judgment, the United States Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) has ruled that:

> "The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552.

■ An issue of material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Incorporated,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying for the Court those portions of the record which it believes demonstrate the absence of a material fact, the opposing party must point to specific evidence. *Williams v. Borough of West Chester,* 891 F.2d 458, 463–64 (3d Cir.1989).

■ In order to defeat a motion for summary judgment, plaintiffs must show that the plaintiff-husband inhaled asbestos fibers shed by the products of the defendants. See *Pongrac v. Consolidated Rail Corp.,* 632 F.Supp. 126 (E.D.Pa.1985); *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 544 A.2d 50 (1988). The plaintiffs must establish more than the presence of asbestos in the workplace; plaintiffs must prove that plaintiff-husband worked in the vicinity of the product's use. *Eckenrod, supra,* 544 A.2d at 52.

### Motion for Summary Judgment of Fiberboard Corporation

■ In response to the Motion for Summary Judgment filed by Fiberboard Corporation, the plaintiffs rely on the affidavits of the plaintiff-husband and his alleged co-worker, Joseph J. Buzzeo, and Answers to Interrogatories filed by Fiberboard Corporation in another asbestos case.

In his affidavit, the plaintiff-husband alleges:

(i) He was employed by J & L Steel Corporation from the late 1950's until the early 1980's as a laborer, millhand, roller builder, guide setter, rougher and roller in various areas of the J & L Steel Corporation Hazelwood and South Side plants, including the rolling mill, open hearth and electric furnace areas.

(ii) From the late 1950's until the early 1980's, he worked in the open hearth of the South Side plant of J & L Steel Corporation approximately two to four weeks per year during which time period on a daily basis, bricklayers and other tradesmen were present making repairs to one of 11 open hearth furnaces.

(iii) In the process of making said repairs, the tradesmen would cut, install and remove asbestos-containing block insulation from the open hearth furnaces, which created asbestos fiber dust that he

and other workers breathed from a distance of one to twenty feet.

(iv) He knows that the block insulation that he and other workers were exposed to contained asbestos because he has worked with and/or near asbestos for over 25 years and is familiar with that material.

(v) Each and every year during his employment at the South Side plant of J & L Steel, he observed visible dust resulting from the cutting, installation and removal of asbestos-containing block insulation. The visible dust persisted in the open hearth department for several hours before the dust settled and even after settling, it would be redistributed by activity and would become visible again.

(vi) At all times there was inadequate artificial ventilation in the open hearth department of the South Side plant and that there were no walls or barriers in the open hearth area to prevent the asbestos dust particles from moving throughout the entire area:

Joseph Buzzeo states in his affidavit:

(i) He was employed by J & L Steel Corporation at the South Side plant from 1952 until 1985 as a second helper and third helper in the open hearth/electric furnace department.

(ii) From 1952 until the early 1970's on a daily basis, bricklayers and other tradesmen were present making repairs to one of the 11 open hearth furnaces and that while in the process of repairing the furnaces, the tradesmen would cut, install and remove asbestos-containing block insulation from the furnaces. This process created dust which he and other workers were forced to breathe from a distance of one to twenty feet.

(iii) From 1952 until the early seventies the asbestos-containing block insulation described above was PABCO block insulation because he specifically recalls seeing the name "PABCO" printed on boxes containing the asbestos-containing block insulation that was used by the tradesmen in the repair process.

(iv) He knows that the PABCO block insulation contained asbestos because he has worked with and/or near asbestos for over 30 years and is familiar with said substance.

(v) In each and every year of his employment at the South Side plant, he observed visible dust resulting from the cutting of insulation and removal of the asbestos-containing block insulation by the tradesmen, which dust persisted in the open hearth area for several hours before it settled and further, after settling would be redistributed by activity and become visible again in the department.

(vi) There was inadequate artificial ventilation to remove the dust or fibers resulting from the use of the asbestos-containing block insulation, nor were there any walls or barriers to prevent the dust particles from moving throughout the entire area.

In its Answers to Interrogatories in another action, Fiberboard admits that it did in fact manufacture PABCO asbestos-containing block insulation.

Plaintiffs also contend, and submit the affidavit of Dr. Gerrit W.H. Shepers and the report of Dr. Michael J. Hodgson, there is no level of asbestos exposure which is insignificant and the disease can occur after being exposed to asbestos for one day.

Based on the above evidence in the record, the Court concludes that there is a genuine issue of fact as to the identification of Fiberboard's insulation causing the plaintiff's alleged injury because a reasonable jury could return a verdict for the non-moving party.

### Motion for Summary Judgment of Owens–Illinois, Inc. ("OI")

■ In responding to OI's Motion for Summary Judgment, the plaintiffs rely on the affidavit of the plaintiff-husband, the affidavit of a co-worker, Robert Yourick, and Answers to Interrogatories filed by OI in another asbestos case. Moreover, plaintiffs rely on the affidavit of Dr. Shepers and the report of Dr. Hodgson.

In his affidavit, plaintiff alleges:

(i) He was employed by J & L Steel Corporation from the late 1950's until the early 1980's as a laborer, millhand, roller builder, guide setter, rougher and roller in many areas of the Hazelwood and South Side plants, including but not limited to the rolling mill, open hearth/electric furnace departments.

(ii) During said time frame when he worked at the Hazelwood plant rolling mills, there were steam lines and water lines located overhead, at floor level, vertically from floor to ceiling and along the side walls.

(iii) From the late 1950's until the early 1970's, for approximately four weeks per year, he worked side by side with tradesmen who were present in the rolling mill making repairs to the steam lines and water lines, and that in the process of making said repairs, the tradesmen cut, installed and removed asbestos-containing pipe covering from the steam lines and water lines, which process created dust breathed by him and other tradesmen from a distance of one to twenty feet.

(vi) From the late 1950's until the early 1970's, on a daily basis, cranes were operated overhead in the rolling mill department which shook and vibrated the steam lines and water lines, knocking loose particles of asbestos-containing pipe covering which created dust breathed by the plaintiff-husband and other workers from a distance of one to twenty feet.

(vii) He knows that the pipe covering contained asbestos because he has worked with and/or near asbestos for over 25 years and is familiar with said substance.

(viii) In each and every year during his employment at the Hazelwood plant, when the asbestos-containing pipe covering was cut, installed, removed and shook loose, he observed visible dust resulting from such activity which dust persisted in the rolling mill area for several hours before it settled, and that even after settling, it would be redistributed by activity and become visible again.

(ix) At all times during his employment in the rolling mill of the Hazelwood plant, there was inadequate artificial ventilation to remove the dust or fibers resulting from the aforesaid activity, nor were there any walls or barriers to prevent the dust particles from moving throughout the entire area.

Robert Yourick, in his affidavit alleges:

(i) He was employed by J & L Steel Corporation from 1951 to 1983, working in various departments including the rolling mill/scarfing beds department as a pipefitter and pipecoverer.

(ii) During the time period when he worked in the rolling mills/scarfing beds department, there were steam lines and water lines located overhead, at floor level, vertically from the floor to the ceiling and along the side walls.

(iii) During the said time period he worked approximately one to two days each week installing and removing asbestos pipe covering from said steam lines and water lines which created dust that he was forced to breathe from a distance of two to thirty feet.

(iv) He knows that from the early 1950's until the late 1950's that the asbestos pipe covering he used while working in the rolling mill/scarfing bed area was "Kaylo" pipe covering because he specifically recalls seeing the name "Kaylo" and "asbestos" printed on boxes of asbestos-containing pipe covering.

In another asbestos case, OI admits that it manufactured Kaylo asbestos-containing pipe covering from the late 1940's to 1950's, and that during this time period, all Kaylo contained asbestos.

Based on the above evidence in the record, the Court concludes that there is a genuine issue of fact as to the identification of OI's insulation causing the plaintiff's alleged injury because a reasonable jury could return a verdict for the non-moving party.